**IT IS ORDERED as set forth below:**

**Date: September 11, 2026**

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **WASH DEPOT CORP,<br>CLARITY PROPERTIES, LLC,<br>LARRY E. CLARK, JR. and,<br>SAMARIA MASHANTA CLARK,** | **Case No. 26-61214-BEM<br>Case No. 26-61216-BEM<br>Case No. 26-61217-BEM** |
| **Debtors.** | **Jointly Administered Under<br>Case No. 26-61214-BEM** |
| **CLARITY PROPERTIES, LLC,** | |
| **Movant,** | |
| **v.** | **CONTESTED MATTER** |
| **HERITAGE BANK, INC.,<br>HYPERION BANK, and<br>TRUIST BANK,** | |
| **Respondents.** | |

**FINAL ORDER AUTHORIZING LIMITED USE OF CASH COLLATERAL BY**
**<u>CLARITY PROPERTIES, LLC AND PROVIDING ADEQUATE PROTECTION</u>**

This matter came on for a hearing before the Court on September 8, 2026 (the "**Final Hearing**"), on the *Emergency Motion of Clarity Properties, LLC for (1) Order Authorizing Use of Cash Collateral to Avoid Immediate and Irreparable Harm, and (2) Final Order Authorizing Cash Collateral Use Upon Shortened Notice* filed August 26, 2026 by Clarity Properties, LLC (the "**Debtor**" and "**Movant**" herein), pursuant to Sections 363 and 542 of the Bankruptcy Code and Bankruptcy Rule 4001(b) (the "**Motion**") to use certain cash that may be subject to security interests and liens in favor of the above-named Respondents.

Having considered the matters set forth in the Motion, the lack of objections by any party in interest, and the entire record in this case, based upon the allegations set forth below:

A. On August 24, 2026 (the "**Petition Date**"), the Debtor filed its Chapter 11 bankruptcy Petition under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). In accordance with §§1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to control and manage its affairs as a debtor in possession.

B. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

C. The statutory predicates for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code.

D. The Debtor was formed in the State of Georgia on January 27, 2014 by Larry Edward Clark, Jr. Mr. Clark is the Debtor's sole manager, member, and officer. The Debtor owns improved real estate located in Georgia and Alabama and leases the same to third party tenants. Gross revenue for year 2025 was $230,848.13. Gross revenue for 2026 year to date was approximately $147,391.15.

E. Wash Depot Corp., wholly owned by Mr. Clark, operates a car wash facility in Marietta, Georgia. Wash Depot Corp. borrowed $5,000,000.00 from Tandem Bank on or about October 27, 2023 for the purchase and outfitting of the car wash facility. The loan is evidenced

by, among other things, a promissory note, leasehold deed to secure debt, assignment of leases and rents, a UCC Financing Statement, the personal guarantees of Mr. Clark and his wife Samaria Mashanta Clark, a 2nd priority deed to secure debt on Mr. and Mrs. Clark's residence, the corporate guaranty of Clarity Properties, LLC, and 2nd priority deeds to secure debt on improved real estate owned by Clarity Properties, LLC. Heritage Bank, Inc. ("**Heritage Bank**") is the current holder of the Tandem Bank loan and security documentation.

F. The Debtor states that Wash Depot Corp. opened for business on March 7, 2025. However, the operating projections that Wash Depot Corp. obtained in order to enter into the Tandem Bank loan proved to be significantly overstated. Revenues and profits have proven not as projected. As a result, Wash Depot Corp. fell behind on payments to Heritage Bank. Heritage Bank filed a Complaint against Wash Depot Corp., Clarity Properties, LLC, and Mr. and Mrs. Clark in the Superior Court of Cobb County and the debtors anticipated that foreclosure proceedings would follow. Wash Depot Corp., Clarity Properties, LLC, and Mr. and Mrs. Clark filed Chapter 11 bankruptcy Petitions on August 24, 2026 in order to protect their assets and restructure their debts. The bankruptcy cases have been administratively consolidated with the Wash Depot Corp. case to serve as the lead case.

G. Upon information and belief, the Respondents may assert security interests in "**Cash Collateral**" as that term is defined in 11 U.S.C. §363(a).

H. Upon information, knowledge, and belief, and in alphabetical order and not necessarily in order of priority, the Respondents assert claims in the approximate amounts as follows:

| Name | Estimated Claim Amount |
|---|---|
| Heritage Bank Corp. | $4,978,193.60 |
| Hyperion Bank | $1,141,611.23 |
| Truist Bank | $563,806.08 |

Total $6,683,610.91

I. The Debtor estimates the value of its assets as follows:

| Asset | Estimated Value |
|---|---|
| Checking account balance | $236,006.93 |
| Real estate holdings | $3,555,000.00 |

Total Asset Value $3,791,006.93

J. To the extent that the Respondents' claims are allowed as secured claims under § 506 of the Code, the Debtor's accounts, rights of payment, cash, and proceeds thereof may constitute Respondents' Cash Collateral.

K. By the Motion, the Debtor seeks (i) final authorization to use Cash Collateral substantially in the amounts and for the purposes specified in the budget prepared by the Debtor and annexed hereto as **Exhibit A** (the "**Budget**"). The Debtor proposes to use Cash Collateral for general and administrative expenses as set forth in the Budget. The expenses incurred by the Debtor and for which Cash Collateral will be used will all be incurred in the normal and ordinary course of the Debtor's business. An immediate and ongoing need exists for the Debtor to use Cash Collateral to continue the operations of the business as a debtor in possession under Chapter 11 of the Bankruptcy Code, to preserve the value of the Debtor's assets as a "going concern," and to avoid disruption to operations.

L. The Debtor's counsel has certified that a copy of the Motion, together with notice of the Interim Hearing, has been properly served upon the United States Trustee, the Respondents, any known attorneys for the Respondents, the creditors listed on the list filed with the Court pursuant to Bankruptcy Rule 1007(d), and any party having filed a Notice of Appearance requesting service of notices in this bankruptcy case. The Debtor alleges that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

M. Good cause has been shown for the entry of this Order and authorization for the Debtor to use Cash Collateral on the Motion pursuant to Bankruptcy Rule 4001(b) . The Debtor's

need for the use of Cash Collateral is immediate and critical, and entry of this Order will minimize disruption of the Debtor's business and serve to preserve the assets of Debtor's estate and is in the best interest of Debtor, its creditors and estate.

N. The use of Cash Collateral and adequate protection arrangements authorized hereunder have been proposed in good faith and at arm's length, and the terms of such Cash Collateral use and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

O. The Respondents are entitled to adequate protection of their respective interests in the Cash Collateral; and

P. This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Disposition of Motion. The Motion is hereby GRANTED on a final basis and the Debtor is authorized to use Cash Collateral as hereinafter set forth.

2. Definitions. As used herein:

(a) the term "**Cash Collateral Period**" shall mean the period commencing on the Petition Date and ending on the earlier of the following dates or events: (a) the appointment of a Chapter 11 Trustee; (b) the conversion of this Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; (c) the occurrence of a default hereunder which remains uncured as provided herein; (d) the entry of an order dismissing the Bankruptcy Case and such Order becoming effective pursuant to its terms; or (e) further order of this Bankruptcy Court;

(b) the term "**Cash Collateral**" shall mean and include the Debtor's post-petition accounts, rights of payment, cash, and proceeds thereof; and

(c) the term "**Permitted Purposes**" shall mean use by the Debtor of Cash Collateral to pay expenses substantially in compliance with the Budget. If the need arises, the Debtor may file

a supplemental Budget extending the time period of the Budget with service upon the United States Trustee, the Respondents or to their counsel of record they have counsel of record, those creditors listed on the list filed with the Court pursuant to Bankruptcy Rule 1007(d), and any party having filed a Notice of Appearance requesting service of notices. Said parties shall have ten (10) days from the date that Debtor files and serves the supplemental Budget to file an Objection. If no Objection is filed, then the supplemental Budget shall be deemed approved. If an Objection is timely filed, then the Court shall conduct a hearing on the matter.

3. Procedures for Use of Cash Collateral. During the Cash Collateral Period, the Debtor is authorized to use Cash Collateral for the Permitted Purposes. The Debtor shall open and maintain debtor in possession checking accounts ("**DIP Accounts**") as required by the United States Trustee's Operating Requirements for Chapter 11 debtors in possession. The Debtor shall deposit all Cash Collateral into its DIP Accounts or other accounts as may be specifically authorized by the Court pursuant to Court Order. The Debtor shall pay its authorized post-Petition expenses from the DIP Accounts or such other accounts as may be specifically authorized by the Court pursuant to Court Order. The Debtor may not exceed the Budget for any given line item by more than ten (10%) percent of the aggregate amount budgeted for that line item per month (the "**Permitted Variance**") without either (i) the consent of the United States Trustee, and the Respondents or (ii) further Order of the Bankruptcy Court as provided below provided, however, any budgeted line item amount for the relevant period that is not spent during that Budget period may be carried over and spent (but only with respect to that very same line item) in the next succeeding Budget period. The Debtor is also authorized to pay the actual utility charges and deposits as may be required under Section 366(b) of the Bankruptcy Code. In the event that the Debtor requires approval for expenditures which exceed the amounts authorized in this Order and the Budget in excess of the Permitted Variance, the Debtor shall request such approval by written request to the United States Trustee, the Respondent and their counsel of record in this bankruptcy case if they have one. Said parties shall have ten (10) business days in which to respond to Debtor's request by serving written notice to the Debtor and the Debtor's counsel of record. Should said parties fail to respond to the Debtor's request within

ten (10) business days, the Debtor may treat such failure to respond as an acceptance to the expenditure(s) in excess of the budgeted amount plus the Permitted Variance for which permission was sought in the request. In the event any request to make an expenditure in excess of the amount in the Budget plus the Permitted Variance is rejected, then Debtor may not use Cash Collateral for such disapproved item without further order of the Bankruptcy Court after notice and an opportunity for hearing are given to the objecting party or parties.

4. Notices. All notices required or permitted under this Order shall be sent to the respective party and attorney at the address listed below either by hand delivery, certified mail return receipt requested, electronic mail, or by facsimile transmission. In the event of notice by certified mail, notice shall be effective upon receipt and refusal of delivery as shown by the return receipt. In the event of notice by electronic mail or facsimile transmission, notice shall be effective upon successful transmission. In the event of notice by hand-delivery, notice shall be effective upon receipt. If notice is given to the Respondents, it shall be sent to:

Hyperion Bank

Hyperion Bank
199 West Girard Avenue
Philadelphia PA 19123
Via email: amujtaba@hyperionbank.com

With a copy to:

Leslie M. Pineyro
Jones & Walden LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
Via email: lpineyro@joneswalden.com

and

Adam E. Ekbom
Jones & Walden LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
Via email: aekbom@joneswalden.com

| | |
|---|---|
| Heritage Bank, Inc.: | Heritage Bank, Inc.<br>1818 Florence Pike<br>Burlington KY 41005<br>Via email: michael@theventurusgroup.com<br><br>With copies to:<br><br>Catrina Markwalter<br>Clark Hill PLC<br>3630 Peachtree Road NE, Suite 700<br>Atlanta, Georgia 30326<br>Via email: cmarkwalter@clarkhill.com<br><br>and<br><br>Casey L. Frew<br>Clark Hill PLC<br>3630 Peachtree Road NE, Suite 700<br>Atlanta, Georgia 30326<br>Via email: cfrew@clarkhill.com |
| Truist Bank: | Truist Bank<br>214 North Tryon Street<br>Charlotte NC 28202<br>Via email: todd.peter@truist.com |

If notice is given to the Debtor, it shall be sent to:

Clarity Properties, LLC
Attn: Larry Clark
PO Box 2176
Smyrna, GA 30081
E-mail: larry.clark9972@gmail.com

With a copy to:

Paul Reece Marr, Esq.
Paul Reece Marr, P.C.
6075 Barfield Road
Suite 213
Sandy Springs, GA 30328-4402
E-mail: paul.marr@marrlegal.com

5. Monthly operating reports. The Debtor shall provide copies of the monthly operating reports filed with this Court to the United States Trustee, and to the Respondents, or to their attorneys to the extent that they are represented by an attorney.

6. Cash Collateral Subject to Respondents' Liens. All Cash Collateral shall remain subject to the respective liens and claims of the Respondents under this Order to the same validity and priority that they held as of the Petition Date.

7. Termination of Authority to Use Cash Collateral. After the expiration of the Cash Collateral Period, the Debtor shall forthwith cease to use any Cash Collateral except to the extent otherwise expressly authorized by the United States Trustee and the Respondents in writing or allowed by order of the Court after notice and a hearing.

8. Adequate Protection to the Respondents. As adequate protection of their interests, pursuant to Bankruptcy Code §§ 361 and 363(e), the Respondents are granted a replacement lien in the Debtor's property of the kind and in priority as the Respondents' liens may have attached to the Debtor's property as of the Petition Date. In addition, the Debtor shall pay to Hyperion Bank the following adequate protection payments: (i) $4,968.66 commencing on or before September 18, 2026, and continuing by the 18th day of each subsequent month (for loan account ending 0540 secured by real property located at 542 Fairview Street, Montgomery, Alabama 36105) and (ii) $3,020.47 commencing on or before September 20, 2026, and continuing by the 20th day of each subsequent month (for loan account ending 7970 secured by real property located at 72 Highway 138, Stockbridge, Georgia 30281 and 559 Forest Parkway, Georgia, 30297), pending further Court order.

9. Reservation of Rights. Nothing contained in this Order shall be deemed to constitute a finding with respect to the adequacy of the protection of the interests of Respondents in their collateral or a waiver by the Respondents of their right to seek other or additional relief from the Court, including, without limitation, the right to seek additional protection, to move for relief from the automatic stay, to seek a dismissal or conversion of this Chapter 11 case, or to seek the appointment of a trustee or examiner.

10. Events of Default. The occurrence or existence of any one or more of the following events or conditions will constitute an "**Event of Default**": (i) the conversion or dismissal of the case; or (ii) the appointment of a trustee or an examiner with expanded powers in the case; and (iii) the Debtor's failure to comply with thisOrder.

11. Remedies Upon Event of Default. Upon the occurrence of an alleged Event of Default, the objecting party may file under this Court's CM/ECF filing system an affidavit of default specifying such Event of Default with service upon the Debtor and the Debtor's counsel at the addresses for the same as reflected in the Court's CM/ECF filing system. Unless otherwise directed by order of this Court, the Debtor's right to use Cash Collateral shall terminate on the tenth (10th) business day following the filing of such written affidavit of default unless the Debtor cures said Event of Default within said ten (10) business day-time period. If the Debtor disputes that an Event of Default has in fact occurred, the Debtor may file a contravening affidavit within ten (10) business days of the date of filing of the affidavit of default with service upon the objecting party or parties and their counsel of record at the addresses for the same as reflected in the Court's CM/ECF filing system. If no such contravening affidavit is timely filed, Debtor shall forthwith cease any further use of Cash Collateral and the Court may enter an order prohibiting further use of Cash Collateral. If the Debtor timely files a contravening affidavit, the Court shall set a hearing to consider the matter. Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to Respondents under this Order shall survive.

12. Survival of Provisions of This Order. The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order that may be entered dismissing the case or converting the cases to a case under Chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

13. Service of this Final Order. The Debtor's counsel shall cause a copy of this Final Order to be served upon the United States Trustee, the Respondents, counsel of record for the Respondents if any, the creditors listed on the list filed with the Court pursuant to Bankruptcy Rule 1007(d), and any party having filed a Notice of Appearance requesting service of notices in the bankruptcy case via Regular U.S. mail, proper postage affixed to ensure delivery.

** END OF DOCUMENT**

Prepared and presented by,
PAUL REECE MARR, P.C.
Debtor's attorney

/s/ Paul Reece Marr
Paul Reece Marr
GA Bar No. 471230
6075 Barfield Road
Suite 213
Sandy Springs, GA 30328-4402
Telephone: 770-984-2255
Email: paul.marr@marrlegal.com

DISTRIBUTION LIST

Pursuant to Local Rule 9013-2(b) for the United States Bankruptcy Court, Northern District of Georgia, following is a list of all parties to be served with a copy of this Order:

Paul Reece Marr, Esq.
Paul Reece Marr, P.C.
6075 Barfield Road
Suite 213
Sandy Springs, GA 30328

**Exhibit A**
**(Budget)**

| | Aug 2026 | Sep 2026 | Oct 2026 |
|---|---|---|---|
| Income | | | |
| 601 Rental Income | 25,373.63 | 25,373.63 | 25,373.63 |
| **Total for Income** | **25,373.63** | **25,373.63** | **25,373.63** |
| Mortgage Payments | 15334.1 | 15334.1 | 15334.1 |
| **Gross Profit** | **10,039.53** | **10,039.53** | **10,039.53** |
| Expenses | | | |
| 751 Accounting | 900.00 | 900 | 900 |
| 753 Advertising | | | |
| 755 Amortization | | | |
| 758 Auto & Truck Expenses | | | |
| 763 Bank Service Charges | | | |
| 785 Depreciation | | | |
| 794 Entertainment Meals | | | |
| 818 Insurance | 5,268.00 | | 13,524.72 |
| 821 Interest Expense | | | |
| 834 Legal & Professional | | | |
| 835 License & Taxes | | | |
| 848 Office Expense | | | |
| 859 UST quarterly fees | | | 250 |
| 861 Property Taxes | | 9,528.24 | 9,294.07 |
| 872 Repairs & Maintenance | 1200 | 1200 | 1200 |
| Lil G's Landscape | 200.00 | 200.00 | 200.00 |
| **Total for 872 Repairs & Maintenance** | **1,400.00** | **1,400.00** | **$1,400.00** |
| 910 Supplies & Materials | | | |
| 941 Utilities | 225.00 | 225.00 | 225.00 |
| **Total for Expenses** | **7,793.00** | **12,053.24** | **25,593.79** |
| **Net Operating Income** | **2,246.53** | **-2,013.71** | **-15,554.26** |
| Other Income | | | |
| 957 Interest Income | 565.00 | 565.00 | 565.00 |
| **Total for Other Income** | **565.00** | **565.00** | **565.00** |
| Other Expenses - Tithes & Offerings | 1003.953 | 1003.953 | 1003.953 |
| **Net Other Income** | **-438.95** | **-438.95** | **-438.95** |
| **Net Income** | **1,807.58** | **-2,452.66** | **-15,993.21** |

# Clarity Properties LLC
## Profit and Loss by Month
### Aug 1, 2026-Jul 31, 2027

| Nov 2026 | Dec 2026 | Jan 2027 | Feb 2027 | Mar 2027 |
|---|---|---|---|---|
| 25,373.63 | 25,373.63 | 25,373.63 | 25,373.63 | 25,373.63 |
| **25,373.63** | **25,373.63** | **25,373.63** | **25,373.63** | **25,373.63** |
| 15334.1 | 15334.1 | 15334.1 | 15334.1 | 15334.1 |
| **10,039.53** | **10,039.53** | **10,039.53** | **10,039.53** | **10,039.53** |
| 900 | 900 | 375 | 375 | 375 |
| 5,252.56 | | | 5,797.17 | 5,780.00 |
| | | 498.00 | | |
| | | 250 | | |
| 16,726.62 | | | | |
| 1200 | 1200 | 1200 | 1200 | 1200 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| **$1,400.00** | **$1,400.00** | **1,400.00** | **1,400.00** | **$1,400.00** |
| 225.00 | 225.00 | 235.00 | 235.00 | 235.00 |
| **24,504.18** | **2,525.00** | **2,758.00** | **7,807.17** | **7,790.00** |
| **-14,464.65** | **7,514.53** | **7,281.53** | **2,232.36** | **2,249.53** |
| 565.00 | 565.00 | 565.00 | 565.00 | 565.00 |
| **565.00** | **565.00** | **565.00** | **565.00** | **565.00** |
| 1003.953 | 1003.953 | 1003.953 | 1003.953 | 1003.953 |
| **-438.95** | **-438.95** | **-438.95** | **-438.95** | **-438.95** |
| **-14,903.60** | **7,075.58** | **6,842.58** | **1,793.41** | **1,810.58** |

| Apr 2027 | May 2027 | Jun 2027 | Jul 2027 | Total |
|---|---|---|---|---|
| 25,373.63 | 25,373.63 | 25,373.63 | 25,373.63 | 304,483.56 |
| **25,373.63** | **25,373.63** | **25,373.63** | **25,373.63** | **$304,483.56** |
| 15334.1 | 15334.1 | 15334.1 | 15334.1 | 184,009.20 |
| **10,039.53** | **10,039.53** | **10,039.53** | **10,039.53** | **$120,474.36** |
| 375 | 375 | 375 | 375 | 7,125.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 35,622.45 |
| | | | | 0.00 |
| | | | | 0.00 |
| | | | | 498.00 |
| | | | | 0.00 |
| 250 | | | 250 | 1,000.00 |
| | | | | 35,548.93 |
| 1200 | 1200 | 1200 | 1200 | 14,400.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 |
| **1,400.00** | **1,400.00** | **1,400.00** | **1,400.00** | **$16,800.00** |
| | | | | 0.00 |
| 235.00 | 235.00 | 235.00 | 235.00 | 2,770.00 |
| **2,260.00** | **2,010.00** | **2,010.00** | **2,260.00** | **$99,364.38** |
| **7,779.53** | **8,029.53** | **8,029.53** | **7,779.53** | **$21,109.98** |
| 565.00 | 565.00 | 565.00 | 565.00 | 6,780.00 |
| | | | | $0.00 |
| **565.00** | **565.00** | **565.00** | **565.00** | **$6,780.00** |
| 1003.953 | 1003.953 | 1003.953 | 1003.953 | 12047.436 |
| **-438.95** | **-438.95** | **-438.95** | **-438.95** | **-$5,267.44** |
| **7,340.58** | **7,590.58** | **7,590.58** | **7,340.58** | **$15,842.54** |